**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Russell Kayer,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-07-02120-PHX-DGC<br><br>**ORDER** |

  On December 2, 2014, the Ninth Circuit Court of Appeals remanded this case for reconsideration of several of Kayer's defaulted federal habeas claims in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Doc. 63.) *Martinez* holds that the ineffective assistance of post-conviction counsel can serve as cause for the procedural default of ineffective assistance of trial counsel claims. The Ninth Circuit remanded Claims 1(B)(1), 1(B)(2), 1(B)(3), and 1(B)(5) of Kayer's amended habeas petition. (Doc. 35.)

  Kayer has filed a supplemental *Martinez* brief (Doc. 72), Respondents have filed a response (Doc. 75), and Kayer has filed a reply (Doc. 78). No party has requested oral argument. For reasons explained below, the Court again finds the claims procedurally barred and denies Kayer's request for evidentiary development.

## I. BACKGROUND

The facts concerning the crime and Kayer's trial are derived from the opinion of the Arizona Supreme Court affirming his conviction and sentence, *State v. Kayer*, 194 Ariz. 423, 427-30, 984 P.2d 31, 35-38 (1999), and from this Court's review of the record.

On December 2, 1994, Kayer was with his girlfriend, Lisa Kester, and his friend, Delbert Haas, driving back from Laughlin, Nevada, to the Prescott area. They stopped on a back road and Haas left the van to urinate. Kayer walked up behind Haas and shot him in the head at point-blank range. Kayer dragged the body into some bushes near the side of the road and left with Kester. When Kayer realized he had forgotten to take Haas's house keys, he returned to where he had left Haas, discovered that Haas still appeared to be alive, and shot him again. Kayer and Kester then drove to Haas's home where they stole several guns, a camera, and other property. Over the next few days they fenced the stolen items at pawn shops and flea markets. While in Las Vegas on December 12, 1994, Kester turned herself in to a hotel security guard, reported the murder, and turned over the gun used to murder Haas.

A grand jury indicted Kayer and Kester on several charges, including premeditated first-degree murder and felony first-degree murder. The State filed a notice that it would seek the death penalty against both Kayer and Kester. Kester entered into a plea agreement with the State. In exchange for her truthful testimony, the original charges would be dropped and Kester would be charged with several lesser counts, including facilitation to commit first-degree murder.

Kayer was tried in March 1997. Kayer and Kester both testified, each accusing the other of killing Haas. The jury convicted Kayer of all charges, finding him guilty of first-degree murder under both premeditated and felony murder theories.

At sentencing, the court found two aggravating factors: that Kayer had previously been convicted of a serious offense and that the murder was committed for pecuniary gain. (Doc. 36, Ex. A.) The court found that Kayer had failed to establish any statutory mitigating factors and had proved only one nonstatutory mitigating circumstance. *Id.*

After weighing the aggravating and mitigating factors, the judge sentenced Kayer to death. *Id.*

The Arizona Supreme Court affirmed the conviction and sentence. *Kayer*, 194 Ariz. 423, 984 P.2d 31. Kayer pursued post-conviction relief ("PCR") with the trial court. (PCR Pet., filed 6/6/05.) The court dismissed a number of the PCR claims as precluded and, following an evidentiary hearing on Kayer's claims of ineffective assistance of counsel, denied the PCR petition. (Doc. 36, Ex's. B, C.) Kayer filed a petition for review (PR doc. 9), which the Arizona Supreme Court denied.

Kayer filed a habeas petition in this Court on December 3, 2007, and a first amended petition on September 17, 2008. The Court denied relief on October 19, 2009. (Docs. 55, 56.)

## II.  APPLICABLE LAW

Federal review is generally not available for a state prisoner's claims when those claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In such situations, federal habeas review is barred unless the petitioner can show cause and prejudice or a fundamental miscarriage of justice. *Id.* *Coleman* held that ineffective assistance of counsel in post-conviction proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez*, the Court announced a "narrow exception" to the rule set out in *Coleman*. The Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320; *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013).

Thus, under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim "where the state (like Arizona) required the petitioner

to raise that claim in collateral proceedings, by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] . . .' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 132 S. Ct. at 1318); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015); *Dickens v. Ryan*, 740 F.3d 1302, 1319-20 (9th Cir. 2014) (en banc); *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (en banc).

In *Clabourne*, the Ninth Circuit summarized the post-*Martinez* approach to establishing cause and prejudice:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* and *Detrich* require that Clabourne make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland*. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

> There is, to be sure, overlap between the two requirements. Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the postconviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

> Put in terms of the conclusions drawn from *Detrich*, the third conclusion – "prejudice" for purposes of the "cause and prejudice" analysis requires only a showing that the trial-level ineffective assistance of counsel claim was "substantial" – does not diminish the requirement of the second conclusion that petitioner satisfy the "prejudice" prong under *Strickland* in establishing ineffective assistance by post-conviction counsel. To demonstrate that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, it will generally be necessary to look through to what happened at the trial stage.

*Clabourne*, 745 F.3d at 377-78 (citations omitted).

For purposes of the prejudice prong under *Martinez* – the requirement that a petitioner's underlying ineffective assistance of counsel claim be substantial – a claim is substantial if it meets the standard for issuing a certificate of appealability. *Martinez*, 132 S. Ct. 1318-19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Under that standard, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich*, 740 F.3d at 1245 (quoting *Miller-El*, 537 U.S. at 336).

### III. ANALYSIS

In Claim 1(B) of his first amended habeas petition, Kayer raised five subclaims alleging ineffective assistance of counsel. (Doc. 35 at 39-53.) At issue on remand are the following subclaims, which this court previously found procedurally defaulted and barred from review. (Doc. 55 at 10-12.)

> Claim 1(B)(1): counsel failed to conduct an immediate and thorough investigation, failed to seek funds for expert and investigative assistance, and failed to develop a valid defense.
>
> Claim 1(B)(2): counsel failed to seek second counsel in a timely manner.
>
> Claim 1(B)(3): counsel were unqualified to defend a capital case.

Claim 1(B)(5): counsel failed to render effective assistance during death qualification of the jury.[1]

Respondents contend that all the claims are insubstantial for *Martinez* purposes. The Court concludes that Kayer cannot satisfy the second element of *Strickland* (a reasonable probability that the result of the PCR proceeding would have been different had these claims been made), nor can he show that the claims are substantial under *Martinez*.[2]

### A.     Relevant Facts

Kayer was indicted on December 29, 1994.  On January 6, 1995, Linda Williamson was appointed to represent him.[3] (RT 1/6/95 at 3.)  Williamson was under a contract with Yavapai County and had been an attorney for nearly five years with significant experience in criminal law, but she had not tried a capital murder case. (RT 3/22/06 at 7–8, 44.)

Williamson asked James Bond, an experienced criminal attorney, to serve as second chair, anticipating that he would focus on mitigation and sentencing. (RT 3/15/06 at 25, 47; RT 3/22/06 at 45-46.)  Bond's actual involvement in the case was minimal. (RT 3/22/06 at 48.)

Williamson filed a number of pretrial motions, including one requesting a Rule 11 pre-screening psychiatric examination of Kayer. (ROA 30.)  The court appointed Dr. Daniel Barack Wasserman to conduct the examination. (*Id*. at 53–54.)  Dr. Wasserman found that Kayer did not suffer from an identifiable mental illness or defect (PCR pet., Ex. 6), and the court found Kayer competent to stand trial (ME 9/27/95).

---

[1] Claim 1(B)(4), alleging ineffective assistance of counsel at sentencing, remains before the Ninth Circuit.

[2] Kayer claims that the Ninth Circuit necessarily found that the ineffective assistance claims were substantial when it remanded the claims to this Court, but the remand order makes no such finding. (Doc. 63.)

[3] The Court described this background in greater detail in its order denying habeas relief. (Doc. 55 at 13-15.)

- 6 -

After investigating leads and interviewing witnesses, Williamson concluded that the case would be difficult to win and that delay was her best option. (RT 3/22/06 at 46; RT 3/16/06 at 98.) She hoped that Kester, who was pregnant with Kayer's child, would begin using drugs again, abscond, or otherwise become unavailable to testify. (RT 3/22/06 at 47-48.)

In June 1996, Kayer sought to remove Williamson and replace her with Bond as lead counsel. The court allowed Williamson to withdraw, directed Bond to remain as second-chair, and appointed David Stoller as lead counsel. (RT 6/21/96 at 9.)

At the time of his appointment, Stoller had been practicing criminal law for nearly 30 years, both as a prosecutor and a defense attorney. (RT 3/15/06 at 57-60.) As a prosecutor, he had taken 50 felony cases to jury trial, including a capital case. *Id*. at 58.

In August, the trial court allowed Bond to withdraw. (RT 8/20/96 at 3.) Kayer requested that Marc Victor, who had represented Kayer on another criminal matter, be appointed to replace Bond. (RT 3/15/06 at 90; RT 3/16/06 at 38.) Victor was appointed as second counsel. At the time, he had about two years of experience as a lawyer.

In January 1997, defense counsel filed a number of motions, including an application for funds to investigate the crime and to conduct a mitigation investigation. (ROA 107A.) Funds for the investigation were granted, but the judge deferred ruling on the request for funds relating to mitigation. (ME 2/24/97; RT 2/24/97 at 3-8.)

Following Kayer's direct appeal, the Arizona Supreme Court filed a PCR notice on his behalf. The court appointed Jess Lorona as Kayer's PCR counsel. Two years later, the Supreme Court allowed Lorona to withdraw after he filed Kayer's PCR petition. Subsequently, the Supreme Court appointed Thomas Phalen to represent Kayer and authorized him to file an amended petition. The court appointed a second PCR attorney, Philip Seplow, to assist Phalen, and provided funding for experts and a mitigation specialist.

On June 1, 2005, Phalen and Seplow filed Kayer's amended PCR petition raising 18 claims. The trial court found all but two claims precluded. It held an evidentiary

hearing on Kayer's claim of ineffective assistance of trial counsel – specifically, his allegations that counsel performed ineffectively in their investigation of mitigating information and with respect to the death qualification of potential jurors during *voir dire*.

The evidentiary hearing covered nine days, between March 15 and March 31, 2006. Bond, Stoller, Williamson, Victor, and Dr. Wasserman all testified at the PCR evidentiary hearing, as did Kayer's older sister, aunt, cousin, and a friend. Several experts also testified, including a clinical neuropsychologist, a psychiatrist, an expert in alcohol and drug addiction medicine, and a defense legal expert. In an order dated May 8, 2006, the trial court dismissed the PCR petition. (Doc. 36, Ex. C.) Counsel filed a petition for review, which the Arizona Supreme Court denied.

**B.   Claim 1(B)(1)**

Kayer alleges that counsel failed to conduct an immediate and thorough investigation and failed to seek funds for expert and investigative assistance, which resulted in a failure to develop a viable defense. (Doc. 35 at 30.) This claim consists of the several specific allegations of ineffective performance.

1.   <u>Casino video</u>

Kayer contends that if Williamson had undertaken a "prompt factual investigation" she "might have been able" to obtain evidence showing that Kayer and Kester did not, as Kester testified, visit Bucky's Casino after the murder. (Doc. 72 at 23-24.) Kayer argues that the casino would have had video footage that counsel could have reviewed to show that he and Kester were not present at the casino.

Kester testified that, after burglarizing Haas's home, Kayer wanted to go "to a casino here in Prescott somewhere." (RT 3/12/97 at 138.) Kester testified that they went to Bucky's Casino for about 45 minutes. (*Id*. at 140.) Kayer denied visiting the casino. (RT 3/21/97 at 65-66.) He now asserts that a "[p]rompt investigation by Williamson would likely have provided the defense with its own evidence – the security video – to corroborate Petitioner's testimony." (Doc. 72 at 24.)

Respondents contend that it is "speculative" to posit that a video tape from December 3, 1994, the date of the alleged casino visit, still existed when Williamson was appointed in January 1995. They note that the gaming compact between the Yavapai-Apache Nation and the State of Arizona required that "[a]ll videotape recordings shall be retained for at least seven (7) days after recording unless a longer period is required by the Tribal Gaming agency, the State gaming Agency, or a court order." (Doc. 72, Ex. G at 134, ¶ (6).) By the time Williamson was appointed, they argue, any video from four weeks earlier likely would no longer exist.

The Court agrees that this argument is based largely on speculation. Kayer provides no evidence that a video recording from the night in question would have been available when Williamson was appointed, nor that the video coverage of the casino was sufficiently comprehensive to prove a negative – that Kayer and Kester never visited the casino on December 3, 1994. The Court cannot conclude that presentation of this speculative argument to the PCR court likely would have altered the outcome of the PCR proceeding as required by the second prong of *Strickland*. Nor can the Court find that this aspect of Kayer's ineffective assistance claim is "substantial" as required by *Martinez*. *See Hurles v. Ryan*, 752 F.3d 768, 782 (9th Cir. 2014) (finding petitioner failed to prove prejudice based on allegation that counsel should have located a witness, explaining "[t]here is nothing in the record to suggest that she has been found, and we can only speculate as to the nature of her testimony and whether it would have helped or undermined Hurles's . . . defense"). As in *Hurles*, Kayer's "claim of prejudice amounts to mere speculation." *Id.* (quoting *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981) (per curiam)).

        2.        <u>Records for Rule 11 evaluation</u>

As noted above, Williamson requested a Rule 11 psychiatric examination of Kayer. (ROA 30.) The trial court appointed Dr. Wasserman to conduct the examination (ME 8/18/95), and he found that Kayer "does not appear to suffer at present from any identifiable mental illness or defect" (PCR pet., Ex. 6 at 11). Dr. Wasserman found that

1 Kayer understood the nature of the proceedings against him and was able to assist in his
2 defense. (*Id.* at 11-12.) Dr. Wasserman did diagnose Kayer with dysthymic disorder and
3 a "rule out" diagnosis of paranoid personality disorder, but this did not change his finding
4 of competency. (*Id.* at 11.)

Kayer contends that Williamson performed ineffectively because she "utterly failed to provide the evaluating doctor with any information relevant to her client's competency or his social, psychological, or medical history" – in particular, information that Kayer suffered from bi-polar disorder. (Doc. 72 at 26.) Respondents counter that "Kayer provides no support for his contention that at the time of the pretrial proceedings in his case, it would have been constitutionally deficient performance for a defense counsel to fail to provide such records for a competency determination." (Doc. 75 at 21.)

In a 2005 declaration, Dr. Wasserman made several relevant statements. He explained that he "was asked to determine the limited question of Mr. Kayer's competency to stand trial. . . . I was not asked to render an opinion regarding the defendant's state of mind at the time of the alleged offense(s)." (Doc. 72-2, Ex. A, ¶ 1.) This was "a very narrow inquiry that seeks to determine whether the client understands that there are charges pending against him; whether he understands the roles of the judge, the jury and the lawyers; and whether he is able to communicate at an acceptable level with his lawyers in order to participate at an acceptable level in his own defense." (*Id.* at ¶ 8.) As Dr. Wasserman explained, "I certainly exercised my greatest professional care in Mr. Kayer's case because of the serious nature of the charges." (*Id.* at ¶ 5.)

Dr. Wasserman expressed in his declaration concern that Williamson did not meet with him, but confirmed that he "read and understood the reasons articulated by Linda Williamson for desiring the evaluation of her client." (*Id.* at ¶ 2.) Although he would carefully have considered Kayer's medical records had Williamson provided them, and such records would have informed his ultimate conclusion, Dr. Wasserman confirmed that "it is impossible to say whether my review of Mr. Kayer's prior medical and psychological records and a review of his social history would have made a difference in

- 10 -

1  my ultimate conclusion with regard to Mr. Kayer's (then) *present* competency[.]" (*Id.* at
2  ¶ 6 (emphasis in original)). Dr. Wasserman also confirmed that, for purposes of a Rule
3  11 examination, the trial court "was my client" and that the exam "was a Court-ordered
4  forensic evaluation for the benefit of the Court, not a therapeutic evaluation of a patient
5  for the treatment of the patient." (*Id.* at ¶ 7.)

6  Kayer has not shown that he was prejudiced by Williamson's failure to provide
7  medical records to Dr. Wasserman. As Dr. Wasserman acknowledges, his assignment
8  was narrow – to determine whether Kayer was competent to stand trial. Kayer does not
9  argue that Williamson erred in failing to request that Wasserman undertake a broader
10 evaluation. And Kayer has presented no evidence that Dr. Wasserman's competency
11 evaluation was flawed or incorrect because he lacked additional medical records. Indeed,
12 Dr. Wasserman himself asserts that it is "impossible to say" whether access to the records
13 would have made any difference in his competency opinion. (*Id.* at ¶ 6.) What is more,
14 as Respondents note, Kayer's competency has never been in question. The Arizona
15 Supreme Court noted that Kayer was "articulate, aware of the proceedings, and
16 knowledgeable about the potential consequences of his choices." *Kayer*, 984 P.2d at 44.
17 Trial attorney Victor considered Kayer intelligent and capable of rational legal
18 discussions. (RT 7/15/97 at 20-21.) Stoller also considered Kayer competent. (RT
19 3/16/06 at 59.) And even if Kayer had been diagnosed with bipolar disorder, it would not
20 necessarily have rendered him incompetent. As Dr. Wasserman notes, "[i]t is possible
21 for an individual to be mentally ill and/or suffer from extreme psychological and
22 emotional distress and still be declared mentally competent to stand trial." (Doc. 72-2,
23 Ex. A, ¶ 8.)

24 Given these facts, the Court cannot conclude that presentation of this issue to the
25 PCR court likely would have altered the outcome of the PCR proceeding as required by
26 the second prong of *Strickland*. Kayer has not shown that Williamson's alleged failure to
27 provide records of a previous bi-polar diagnosis had any effect on Dr. Wasserman's
28

competency opinion. Nor can the Court find that this aspect of Kayer's ineffective assistance claim is "substantial" as required by *Martinez*.

Kayer cites *Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir. 1999), for the proposition that Williamson was obligated to provide Dr. Wasserman with Kayer's mental health records. (Doc. 78 at 3-4.) In *Wallace*, the court found that counsel performed ineffectively at the sentencing stage of trial by failing to provide defense experts with information about the petitioner's dysfunctional family background. 184 F.3d at 1116. The lack of information led to "incomplete diagnoses" and would have changed the experts' opinions about the petitioner's mental health. (*Id.*) The court summarized its holding as follows:

> Does an attorney have a professional responsibility to investigate and bring to the attention of mental health experts who are examining his client, facts that the experts do not request? The answer, at least at the sentencing phase of a capital case, is yes.

*Id.*; *see Caro v. Calderon*, 165 F.3d 1223, 1228 (9th Cir. 1999) ("A lawyer who knows of but does not inform his expert witnesses about . . . essential pieces of information going to the heart of the case for mitigation does not function as 'counsel' under the Sixth Amendment, let alone as a 'good lawyer.'"). Both *Wallace* and *Caro* address counsel's failure to provide defense experts with information at the mitigation and sentencing stage of a case. They do not hold that counsel is obligated to provide such information to an expert conducting a Rule 11 competency examination on behalf of the court.

### 3. Medical examiner

Kayer argues that trial counsel had an obligation to consult with experts and present evidence supporting his defense that it was Kester who shot Haas. (Doc. 72 at 29.) He contends that his attorneys should have requested funds from the court to hire an independent medical examiner who "could have assisted defense counsel in interpreting the victim's autopsy and the findings of the state's medical examiner." (*Id.*)

Kester testified that Kayer walked behind Haas and shot him in the back of the head. (RT 3/12/1997 at 91-93.) According to Kester, Kayer was standing "right behind"

the victim when he fired the shot. (*Id.* at 92.) Kayer argues that an independent pathologist would have informed counsel that the bullet "came from a significantly left angle, entering the head almost horizontally, rather than from directly behind the victim," thus undermining Kester's testimony about Kayer's position at the time of the shooting. (Doc. 72 at 30.) But at trial, Dr. Keen testified that the "wound to the left side behind the ear . . . cause[d] a long area of fracturing, as it tunneled through the portion of the bone, and then it began to deflect downward." (RT 3/7/97 at 181.) He demonstrated the trajectory of the two wounds and testified that the "left wound is mostly horizontal." (*Id.* at 183.) This testimony is not significantly different from what Kayer alleges an independent medical examiner would have found. (Doc. 72 at 30.)

Given the nature of Dr. Keen's testimony, the Court cannot conclude that Kayer was prejudiced by failure to call an independent medical examiner. The Court cannot find that presentation of this issue to the PCR court likely would have altered the outcome of the PCR proceeding as required by the second prong of *Strickland*. Nor can the Court find that this aspect of Kayer's ineffective assistance claim is "substantial" as required by *Martinez*.[4]

### 4. Ballistics expert

Kayer alleges that trial counsel Stoller and Victor performed ineffectively by failing to retain an independent ballistics expert and by entering into the following stipulation:

> A .32 caliber pistol turned over to the police by Lisa Kester was examined. The recovered bullets and expended cartridges were compared to the pistol. The two recovered bullets and the two recovered expended cartridges were fired by the pistol Lisa Kester turned over to the police. The .32 caliber pistol was test-fired and would operate normally as a pistol.

(RT 3/7/97 at 158.)

---

[4] In his supplemental brief, Kayer indicated that he would submit a declaration from an independent medical examiner in support of this allegation. (*Id.* at 30 n.3.) Kayer has not submitted a declaration.

- 13 -

1     Kayer contends that "troubling discrepancies" in the State's ballistics evidence
2 would have "undermined the prosecution's reliance on the evidence." (Doc. 72 at 28.) In
3 June 1995, the Arizona Department of Public Safety examined the pistol turned in by
4 Kester, as well as two cartridge cases recovered at the scene and bullets recovered from
5 Haas's body. (Doc. 73, Ex. H, at 041.) Examiner Edward Hueske identified one
6 cartridge case and one bullet as having been fired from the pistol. (*Id.*) He could neither
7 identify nor eliminate the other cartridge case and bullet. (*Id*.) In February 1997, a
8 different examiner, Terrance Weaver, performed a "reanalysis for court." (*Id*. at 069.) In
9 Weaver's opinion, all the cartridges and bullets were fired by the pistol. (*Id.*) In contrast
10 to Hueske's findings, Weaver was able to determine the diameter of the bullets; Weaver
11 and Hueske also listed different weights for the bullets, and Weaver, unlike Hueske,
12 noted trace evidence on the cartridges. (*Id.* at 90.)

13     Kayer alleges that "no reasonably competent attorney would have stipulated to an
14 interpretation of the ballistic evidence that was contradicted by the prosecution's own
15 investigation." (Doc. 72 at 29.) Although this statement sounds persuasive in the
16 abstract, the Court cannot conclude that it applies to this case. First and foremost,
17 Kayer's defense at trial was that Kester shot the victim. He testified at trial that he left
18 Kester and the victim in the van arguing and went for a walk, he heard shots, and when
19 he returned to the van the victim was on the side of the road. Thus, Kayer had every
20 incentive to assert that the gun Kester later gave to authorities was in fact used to shoot
21 the victim.

22     In addition, the stipulation was largely accurate. Kayer does not dispute that a .32
23 caliber pistol was turned over to police by Kester, that is was examined by law
24 enforcement, that two bullets were recovered from the victim, and that two expended
25 cartridges were found. Nor does he dispute that the pistol was test-fired and operated
26 normally. Although the law enforcement experts reached different conclusion regarding
27 which cartridges and bullets could be tied to the pistol, they each found that at least one
28 cartridge and one bullet were fired by the pistol. Given his testimony at trial, Kayer had

- 14 -

1  nothing to gain from suggesting that the evidence – which supported his story that Kester shot the victim with the gun she later surrendered – was inconsistent or inconclusive.

Thus, it was objectively reasonable for Stoller and Victor to stipulate that the gun in Kester's possession was the murder weapon.  The Court cannot find that presentation of this issue to the PCR court likely would have altered the outcome of the PCR proceeding as required by the second prong of *Strickland*.  Nor can the Court find that this aspect of Kayer's ineffective assistance claim is "substantial" as required by *Martinez*.

In summary on Claim 1(B)(1), Kayer has not shown that PCR counsel performed at a constitutionally ineffective level by omitting this claim.  *See Martinez*, 132 S. Ct. at 1319.  Default of Claim 1(B)(1), therefore, is not excused by cause and prejudice, and it remains barred from federal review.[5]

### C.  Claims 1(B)(2) and (3)

Kayer alleges that Williamson performed ineffectively by failing to seek second counsel in a timely manner and that lead counsel were unqualified to defend a capital case.  (Doc. 35 at 42–43.)  Kayer says almost nothing about these claims in his supplemental briefing.

There is no deficient performance in failing to seek second counsel unless the record shows that counsel was unable to try the case alone.  *See Allen v. Woodford*, 395 F.3d 979, 998 (9th Cir. 2005); *Riley v. Taylor*, 277 F.3d 261, 306 (3d Cir. 2001) ("The Constitution does not specify the number of lawyers who must be appointed.  If a single attorney provides reasonably effective assistance, the Constitution is satisfied, and if a whole team of lawyers fails to provide such assistance, the Constitution is violated.").  Likewise, lack of experience and a heavy caseload "do not, in and of themselves, amount to a *Strickland* violation."  *Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014) *cert.*

---

[5] Although PCR counsel Phalen, in a declaration dated March 18, 2015, states that he had no "strategic reason" for omitting Claim 1(B)(1) (Doc. 74, Appx. A), failure to raise a meritless claim does not constitute deficient performance.  *See Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (failure to raise meritless ineffective of assistance of counsel claim does not fall below *Strickland* standard).

- 15 -

*denied sub nom. Holbrook v. Woods*, 135 S. Ct. 2311 (2015); *see Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998) ("It is well established that an ineffective assistance claim cannot be based solely on counsel's inexperience."). Instead, a petitioner "must point to specific acts or omissions that may have resulted from counsel's inexperience and other professional obligations." *Woods*, 764 F.3d at 1132 (citing *Strickland,* 466 U.S. at 690); *see LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998) ("In considering a claim of ineffective assistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance.").

Accordingly, the qualifications of lead counsel and Williamson's failure to seek the appointment of second counsel can give rise to habeas relief only if Kayer shows that these factors prejudiced the defense. The only specific allegations of ineffectiveness are those discussed in this order, and the Court finds no prejudice arising from them. PCR counsel therefore did not perform at a constitutionally ineffective level in omitting these claims. *Clabourne*, 745 F.3d at 377. Default of the claims is not excused and they remain barred from federal review.

### D.     Claim 1(B)(5)

Kayer alleges that trial counsel performed ineffectively during death qualification of the jury. In his first amended habeas petition, Kayer alleged that Stoller and Victor were constitutionally incompetent during the *voir dire* proceedings because they failed to object to the court's dismissal of juror Edmond DeMar on *Witherspoon* grounds.[6] (Doc. 35 at 59; *see* Doc. 72 at 30-32.)

In finding this claim procedurally defaulted and barred, the Court explained that in Arizona, fair presentation requires that capital petitioners present their allegations not only to the PCR court but also to the Arizona Supreme Court upon denial of relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Swoopes v. Sublett*, 196 F.3d 1008 (9th

---

[6] In *Witherspoon v. Illinois*, 391 U.S. 510, 522 & n.21 (1968), the Supreme Court held that exclusion for cause is appropriate if a juror's views on the death penalty would "prevent them from making an impartial decision as to the defendant's guilt."

Cir. 1999) (per curiam) (explaining that capital petitioners must seek review in Arizona Supreme Court to exhaust claims). Kayer raised this claim in his PCR petition (PCR Pet. at 37), but did not include the claim in his petition for review (*see* PR doc. 9). Kayer contends that this failure on the part of his PCR attorneys constitutes "cause" under *Martinez*. (Doc. 72 at 19 & n.2.) The Court disagrees. *Martinez* applies only to "initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." 132 S. Ct. at 1320. It "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.*

Moreover, this claim is not substantial. On direct appeal, the Arizona Supreme Court held that DeMar was properly excused for cause. *Kayer*, 194 Ariz. at 432, 984 P.2d at 40 ("[T]he trial court did not err in asking DeMar questions regarding the death penalty, nor did the court err in allowing DeMar to be excused from jury service given the presence of 'honestly held' reservations regarding the death penalty that might have affected DeMar's ability to carry out his oath with respect to issues of guilt.").[7]

Trial counsel did not perform ineffectively in failing to object to DeMar's removal. At the PCR evidentiary hearing, Stoller and Victor explained that they did not want DeMar on the jury and were happy they did not have to use a peremptory challenge to exclude him. (RT 3/16/06 at 41-42; RT 3/22/06 at 96.) Stoller noted that DeMar was familiar with the crime, was friends with a deputy county attorney, and seemed to be the kind of person who wanted attention. (RT 3/16/06 at 41-42.) Because the Arizona Supreme Court determined that DeMar was properly dismissed, and because trial counsel did not want DeMar on the jury, PCR counsel did not perform deficiently or prejudice Kayer by failing to raise this claim in the petition for review.

---

[7] This Court later found that the Arizona Supreme Court did not unreasonably apply clearly established federal law in rejecting the claim. (Doc. 55 at 45-47.)

*Martinez* is inapplicable to this claim. Even if it did apply, the claim is not substantial and PCR counsel did not perform at a constitutionally ineffective level by failing to raise it before the Arizona Supreme Court. *Clabourne*, 745 F.3d at 377. Default of the claim is not excused and it remains barred from federal review.

## IV.  EVIDENTIARY DEVELOPMENT

Kayer seeks evidentiary development in the form of expansion of the record, discovery, and a hearing. (Doc. 72 at 35-40.) The restrictions of 28 U.S.C. §§ 2254(d)(1) and (e)(2) "do[] not bar a hearing before the district court to allow a petitioner to show 'cause' under *Martinez*." *Dickens*, 740 F.3d at 1321. Accordingly,

> a petitioner, claiming that PCR counsel's ineffective assistance constituted "cause," may present evidence to demonstrate this point. The petitioner is also entitled to present evidence to demonstrate that there is "prejudice," that is that petitioner's claim is "substantial" under *Martinez*. Therefore, a district court may take evidence to the extent necessary to determine whether the petitioner's claim of ineffective assistance of trial counsel is substantial under *Martinez*.

*Id.*

A hearing is not necessary to determine whether Kayer's defaulted claims of ineffective assistance of trial counsel are substantial. There are no contested facts, and the record is sufficient to make a determination under *Strickland* and *Martinez* that the remanded claims are not colorable. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Kayer's trial counsel all testified during the state PCR evidentiary hearing, and the record is complete with respect to the actions of trial and PCR counsel. The Court will, however, expand the record to include Exhibits F and G, which were attached to Kayer's supplemental brief (Doc. 72), and Appendix A to Kayer's supplement to the brief (Doc. 74), as the parties have cited these documents.[8]

---

[8] Exhibit F consists of handwritten notes by Petitioner concerning his interaction with trial counsel Linda Williamson. Exhibit G consists of the Yavapai-Apache Nation

- 18 -

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only when a petitioner "has made a substantial showing of the denial of a constitutional right." This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a certificate will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

For the reason stated in this order, the Court finds that reasonable jurists could not debate the conclusion that Claims 1(B)(1), (2), (3), and (5) are procedurally barred.

**IT IS ORDERED:**

1. Claims 1(B)(1), (2), (3), and (5) are **denied** as procedurally barred.
2. Petitioner's request to expand the record, for evidentiary development, and for an evidentiary hearing is **denied**, except that Exhibits F and G, Doc. 72, and Appendix A, Doc. 74, are added to the record.
3. A Certificate of Appealability is **denied**.
4. Within 10 days of this order, the parties shall file simultaneous status reports in the Court of Appeals or move, consistently with the relevant rules, for other appropriate relief. (Doc. 63.)

Dated this 14th day of June, 2016.

_____
David G. Campbell
United States District Judge

---

and State of Arizona Gaming Compact of 1993. Appendix A is PCR counsel Phalen's 2015 declaration.